UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-21830-RKA

SIMON GERALD SULLENBERGER,

      Plaintiff,

v.

CITY OF CORAL GABLES, a political
Subdivision of the State of Florida; JORGE
PUGA, individually and in his capacity as
a Police Officer for the City of Coral
Gables; NATALIE FLORES, individually
And in her capacity as a Police Officer for
the City of Coral Gables; JECABSEEL
NUNEZ, individually and in his capacity
as a Police Officer for the City of Coral
Gables,

      Defendants.

_____/

**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

Defendants, Officers Jorge Puga ("Officer Puga"), Natalie Flores ("Officer Flores"),

Jecabseel Nunez ("Officer Nunez") (collectively, the "Defendant Officers"), and the City of Coral

Gables ("City"), by counsel, move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure and Local Rule 7.1 of the Southern District of Florida, for the entry of an Order

dismissing the First Amended Complaint ("Complaint") filed by *pro se* Plaintiff, Simon

Sullenberger ("Sullenberger"). In support, Defendants submit as follows:

**BACKGROUND**

This action arises from Sullenberger's arrest the night of December 2, 2017. The arrest

occurred after Sullenberger had set off the Emergency "Panic" Burglar alarm at his parents' house

in Coral Gables, Florida ("Residence"). Compl., ¶¶ 1-26. *See also* Arrest Affidavit ("Arrest Aff")

Case 1:22-cv-21830-RKA   Document 26   Entered on FLSD Docket 11/21/2022   Page 2 of 26

CASE NO.: 1:22-cv-21830-RKA
DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

[DE 1-3] filed with original Complaint. Apparently, after setting off the burglar alarm while his parents were out of the house, Sullenberger felt it would be an opportune time to get his shotgun and sit outside on the "very dark" dimly lit porch to begin unloading his firearm while waiting for his parents to return. Compl., ¶¶ 8-9. Officers Flores and Nunez, two City of Coral Gables police officers, arrived at the Residence in response to the burglar alarm and encountered Sullenberger holding his shotgun. The encounter ended with Sullenberger's arrest, and he was charged with resisting an officer with violence to her person with a firearm, aggravated battery on a law enforcement officer, and attempted murder in the second degree of law enforcement officer. *See* Arrest Aff [DE 1-3]. The criminal case on these charges was resolved without trial.

Plaintiff commenced this federal court action on June 15, 2022 seeking to bring 24 U.S.C. §1983 claims against the City and Defendant Officers. In a section titled "Causes of Action," Sullenberger claims Defendants violated his "Fourth Amendment right to be free of unlawful seizures" and "violation of due process under the Fourteenth Amendment of the United States Constitution." Compl., ¶ 32. Sullenberger seeks damages "to compensate him for actions taken by Defendants including: Acting in bad faith, unlawful and humiliating arrest, assault, battery, false imprisonment, and negligence." *Id.* at ¶ 33. Sullenberger also purports to seek "[p]unitive damages against the City of Coral Gables for recklessly disregarding Plaintiff's Constitutional right to be free of unlawful seizures." Dismissal of the Complaint is appropriate for these reasons:

(1)     Because the action was filed more than four years after his arrest, Sullenberger's lawsuit is time-barred by the statute of limitations under section § 95.11(3), Fla. Stat., warranting dismissal **with prejudice**;

(2)     Even if Sullenberger could somehow get past the untimeliness of his lawsuit (which he cannot), dismissal is still warranted where Sullenberger's shotgun pleading fails to assert

separate counts as to each defendant named in his Complaint;

(3)     The Complaint also fails to state claims upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and the pleading standard required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Complaint does not allege facts that reflect the Defendant Officers violated Sullenberger's Fourth or Fourteenth Amendment rights or that the City otherwise violated his civil rights and denied him due process;

(4)     Even leaving aside the Complaint's pleading insufficiencies, Plaintiff's claims against the Defendant Officers cannot proceed. The Defendant Officers, alleged to be City of Coral Gables police officers acting under state law, are entitled to qualified immunity. Sullenberger's "unlawful seizure" and "violation of due process" claims cannot survive where there was probable cause to carry out Plaintiff's arrest and no legally cognizable *Brady* violation has taken place; and

(5)     Lastly, dismissal is warranted where Plaintiff's demand for punitive damages is legally impermissible as such damages are not recoverable against a municipality in a §1983 suit.

## LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. *See also Iqbal,* 556 U.S. at 678 (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570).

Case 1:22-cv-21830-RKA   Document 26   Entered on FLSD Docket 11/21/2022   Page 4 of 26

CASE NO.: 1:22-cv-21830-RKA
DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

Despite the assumption of the truth of the factual allegations of the complaint, where there is a dispositive legal issue which precludes relief, dismissal is warranted. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

"[M]ore than conclusory allegations are required to state a cause of action under § 1983." *Bush v. City of Daytona Beach*, No. 6:12-CV-1541-ORL-36, 2013 WL 3209430, at \*6 (M.D. Fla. 2013) (citing *Keating v. City of Miami,* 598 F.3d 753, 762–63 (11th Cir. 2010) ("this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out non-meritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim") (internal quotation marks omitted)).

### A. Dismissal on Statute of Limitation Grounds

Where, as in this case, it is apparent from the face of the complaint that the claim is time barred, a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate. *See American Marine Tech, Inc. v. World Group Yachting, Inc.*, 418 F. Supp. 3d 1075, 1081 (S.D. Fla. 2019). *See also Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1328 (S.D. Fla. 2012) ("Generally, whether a claim is barred by the statute of limitations should be raised as an affirmative defense in the answer rather than in a motion to dismiss … However, if facts on the face of the pleadings show that the statute of limitations bars the action, the defense can be raised by motion to dismiss."); *Lawson v. City of Miami Beach*, 908 F. Supp. 2d 1285 (S.D. Fla. 2012) ("A court may dismiss a complaint under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim."). Further, "[a] district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit

Case 1:22-cv-21830-RKA   Document 26   Entered on FLSD Docket 11/21/2022   Page 5 of 26

CASE NO.: 1:22-cv-21830-RKA
DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

When plaintiff's claims are time-barred by the statute of limitation, courts do not hesitate to dismiss plaintiff's claims with prejudice. *See e.g.*, *Baker v. City of Hollywood*, 391 F. App'x 819, 820 (11th Cir. 2010) (per curiam) (affirming the district court's dismissal of plaintiff's complaint for excessive use of force because it was clear that he filed it after the four-year limitations period had run); *Maps v. Murphs*, 17-21167-CIV-KING, 2017 WL 11622095, at *1 (S.D. Fla. June 14, 2017) (dismissing with prejudice *pro se* 42 U.S.C. § 1983 action "as the acts complained of occurred outside the four-year statute of limitations for such claims"); *Simione v. Libman*, 18-63037-CIV, 2019 WL 6324284, at *3 (S.D. Fla. Nov. 25, 2019) (dismissing plaintiff's complaint with prejudice in which he alleged Section 1983 claims barred by the statute of limitations).

### B. Dismissal Based on Qualified Immunity

On a motion to dismiss raising the affirmative defense of qualified immunity, the Court in *Lawson v. City of Miami Beach*, 908 F. Supp. 2d 1285 (S.D. Fla. 2012) explained that a "court may dismiss a complaint under Rule 12(b)(6) 'when its allegations, on their face, show that an affirmative defense bars recovery on the claim.'" *Id.* at 1289 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003)). This is because qualified immunity in particular "is intended 'to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Id.* (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010)). "As a result, 'unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Id.* (quoting *Cottone*, 326 F.3d at 1357).

### MEMORANDUM OF LAW

### I.   DISMISSAL WITH PREJUDICE IS REQUIRED WHERE SULLENBERGER'S

### CLAIMS ARE TIME-BARRED

Once the statute of limitations has run, the action is barred regardless of the merits of plaintiff's claims. *See Lewis v. Broward Cnty. Sch. Bd.*, 489 Fed. Appx. 297, 298 (11th Cir. 2012). For actions brought under section 1983, "[f]ederal courts apply their forum state's statute of limitations for personal injury actions." *Ellison v. Lester*, 275 Fed. Appx. 900, 901 (11th Cir. 2008). *See also* 42 U.S.C. § 1988(a) (providing that state law determines the statute of limitations applicable to a claim filed pursuant to § 1983). Accordingly, the four-year statute of limitations set forth in section § 95.11(3), Fla. Stat. applies to all section 1983 claims arising in Florida. *Ellison*, 275 Fed. Appx. at 901–02. *See also Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) ("Florida's four-year statute of limitations applies to such claims of deprivation of rights under 42 U.S.C. §§ 1983 and 1985."); *City of Hialeah v. Rojas*, 311 F.3d 1096, 1102 n. 2 (11th Cir. 2002) ("Section 1983 claims are governed by the forum state's residual personal injury statute of limitations, which in Florida is four years").

"The question of when the limitations period begins to run is one of federal law." *Lewis*, 489 Fed. Appx. at 298. In this jurisdiction, "the statute of limitations for § 1983 claims begins to run when facts supporting the cause of action are or should be reasonably apparent to the claimant." *Jones v. Union City*, 450 Fed. Appx. 807, 809 (11th Cir. 2011). Put differently, "[a] section 1983 claim accrues — and the statute of limitations begins to run — when the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Baker v. City of Hollywood*, 391 Fed. Appx. 819, 821 (11th Cir. 2010).

Sullenberger's unlawful seizure / arrest claims brought under § 1983, began to run the day he was detained by a legal process. *Baker*, 391 Fed. Appx. at 821. The Eleventh Circuit has interpreted this to mean that a false arrest claim will begin to accrue on the date of the arrest. *Shuler*

*v. Duke*, 792 Fed. Appx. 697, 702 (11th Cir. 2019). *See also Brown v. Lewis*, 361 Fed. Appx. 51, 55 (11th Cir. 2010) (statute of limitations for a section 1983 claim for false arrest and false imprisonment accrued on the date of plaintiff's arrest on which he based his claims); *Johnson v. Cnty. of Paulding, Georgia*, 780 Fed. Appx. 796, 799 (11th Cir. 2019) (plaintiff was detained for legal process on the date he alleges he was falsely arrested for driving under the influence; it was apparent on the date of his arrest that he potentially had a claim for false arrest).

Similarly, claims for constitutional due process violations brought under §1983 begin to accrue on the date Sullenberger would have learned his rights had been violated — the date he believes he was falsely arrested and falsely charged. *See Raudez v. Vill. Of Biscayne Park*, No. CV-20-2204-CIV, 2020 WL 6364470, at *1 (S.D. Fla. Oct. 29, 2020)(applying 4-year statute of limitations for due-process violations under §1983 accruing on date plaintiff was falsely arrested and charged noting, "if plaintiff did not commit the crimes he was arrested and charged with, he would have had a basis *at that time* to assert his claims at the time of his wrongful arrest")(emphasis in original).

It is apparent here from the face of the Complaint, as well as the Arrest Affidavit [DE 1-3] that Sullenberger's § 1983 claims against the named Defendants are time-barred under Florida's four-year statute of limitations. No matter if Sullenberger's section 1983 claims are based on his alleged unlawful seizure, violation of due process, or both, the statute of limitations for these claims has lapsed. Sullenberger's claims began to accrue on **December 2, 2017**, the night he was arrested. *See* Compl., ¶¶ 1-26. *See* Arrest Aff [DE 1-3]. As a result, under Florida's four-year statute of limitations, Sullenberger had until December 2, 2021 to file the present action. The Complaint, however, was not filed until June 15, 2022 – **more than 6 months <u>after</u> the applicable**

**statute of limitations had run.**

Sullenberger has known of the facts supporting this cause of action for many years now.[1] Because any further amendment would be futile here, Sullenberger's section 1983 claims against the Defendants are effectively time-barred and must be dismissed **<u>with prejudice</u>**. *See Hughes*, 350 F. 3d at 1163; *Baker*, 391 F. App'x at 820; *Simione,* 2019 WL 6324284, at *3; *Adams*, 818 Fed. Appx. at 890; *Walton for Estate of Smith,* 2018 WL 1393520, at *3; *Maps* 2017 WL 11622095, at *1. It is not considered an abuse of discretion to dismiss a *pro se* plaintiff's complaint with prejudice when any further amendment would be futile because plaintiff cannot state a claim. *Adams v. Office of Governor*, 818 Fed. Appx. 887, 890 (11th Cir. 2020), *cert. denied sub nom.,* 141 S. Ct. 1425 (2021) ("Generally, the district court abuses its discretion if it does not provide a *pro se* plaintiff at least one opportunity to amend his complaint before dismissing it with prejudice, unless doing so would be futile because a more carefully crafted complaint would still not be able to state a claim.").

## II.   IMPERMISSIBLE SHOTGUN PLEADING AND WARRANTS DISMISSAL

Even if Sullenberger could somehow get past the fact that this action is barred by the statute of limitations (which he cannot), dismissal is still warranted where the Complaint is an impermissible "shotgun pleading." In *Weiland v. Palm Beach Cnty. Sheriff's Off.*, the Eleventh Circuit explained that complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are "shotgun" pleadings, and identified roughly four categories into which they fall: (1) a pleading

---

[1] Prior to this action, on November 12, 2019, Sullenberger sued the same named Defendants in state court for state law claims of assault, battery, false imprisonment, and negligence, arising from his December 2, 2017 arrest. *See Sullenberger v. City of Coral Gables et al.*, Miami-Dade County Circuit Court Case No.  2019-033136 CA 01(02). No violation of federal civil rights was alleged in that litigation. The officers had been dismissed from the case, and while an amended complaint was pending, Sullenberger advised the court that he wished to dismiss the state court action and proceed in federal court. An Order of Dismissal was entered on October 18, 2022.

with multiple counts where each count adopts the allegations of the preceding counts: (2) a pleading that relies on conclusory and vague allegations not tied to any cause of action; (3) a pleading that fails to separate out its various causes of action and claims for relief; and (4) a pleading that asserts many claims against multiple defendants without specifying which defendants are responsible for which acts or omissions. 792 F.3d 1313, 1321-23 (11th Cir. 2015).

The Eleventh Circuit is resolute and uniform in expressing its concerns about the repercussions of cases proceeding on shotgun pleading bases. *See, e.g.*, *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice."); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356-57 (11th Cir. 2018) ("Shotgun pleadings […] exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources.  Moreover, justice is delayed for the litigants who are 'standing in line,' waiting for their cases to be heard.") (quoting *Cramer v. Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997)).

For this reason, "[c]ourts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). Shotgun pleadings are impermissible, and district courts are vested with inherent authority to dismiss a complaint on shotgun pleading grounds alone without ever looking at the complaint's merits. *Id. See also Jackson*, 898 F.3d at 1357 ("[W]e have condemned shotgun pleadings time and again, and this is why we have repeatedly held that a District Court retains authority to dismiss a shotgun pleading on that basis alone.").

9

Defendants acknowledge that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will therefore, be liberally construed." *Rodriguez v. Scott*, 775 Fed. Appx. 599, 602 (11th Cir. 2019). Even so, "pro se litigants must still comply with the Federal Rules of Civil Procedure", such as Fed. R. Civ. P. 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pro litigant is entitled to relief. *Id.* (dismissing pro se prisoner's shot gun pleading against officials in § 1983 action). *See McDowell v. Gonzalez*, 424 F. Supp. 3d 1214, 1222 (S.D. Fla. 2019), aff'd, 820 Fed. Appx. 989 (11th Cir. 2020) (arrestee's pro se complaint was an impermissible shotgun pleading).

The instant Complaint is a shotgun pleading because it violated at least 3 of the 4 categories identified in *Weiland*. First, the Complaint is filled with conclusory and vague allegations that are not tied to any cause of action. *See* Compl., ¶¶ 1-26. Second, the Complaint asserts many claims against multiple defendants without specifying which Defendants are responsible for which acts or omissions. *Id.*, ¶¶ 1-26, 31-35. And third, the Complaint fails to separate out its various causes of action and claims for relief. *Id.,* ¶¶ 31-35, 36(a)-(e).

Indeed, after spending the first 8 pages of his Complaint providing a vague and conclusory description of his encounter with the Officers on the night of December 2, 2017, Sullenberger includes only one short section titled "Causes of Action," which alleges a single § 1983 claim against all four named Defendants "for violation of his Fourth Amendment right to be free of unlawful seizures and violation of due process under the Fourteenth Amendment[.]" *Id.*, ¶ 32. Sullenberger then proceeds to demand damages for actions he claims were taken collectively "by Defendants," including "[a]cting in bad faith, unlawful and humiliating arrest, assault, battery, false imprisonment, and negligence," with no explanation as to how the elements of these claims are met by each of the named Defendants or how they purportedly relate to his § 1983 cause of

Case 1:22-cv-21830-RKA   Document 26   Entered on FLSD Docket 11/21/2022   Page 11 of 26

CASE NO.: 1:22-cv-21830-RKA
DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

action. *Id.*, ¶ 33. *See Kabbaj v. Obama*, 568 F. App'x. 875, 880 (11th Cir. 2014) (improper shotgun pleading where "the complaint refers to the defendants collectively, making it impossible to identify which particular defendant engaged in what allegedly wrongful conduct").

In short, Sullenberger's Complaint is vague, confusing, and it fails to give each of the Defendants adequate notice of the claims asserted against them and the grounds on which each claim rests. Accordingly, dismissal of the Complaint is warranted.

## III. COMPLAINT FAILS TO STATE A CLAIM UNDER 42 U.S.C. §1983 AS TO ANY DEFENDANT

On top of the above threshold pleading deficiencies, Sullenberger's claims are subject to dismissal where the Complaint fails to assert a factually and legally cognizable cause of action under § 1983 as to each of the Defendants.

### A. The Complaint Fails to State a § 1983 Claim Against the City

"The [United States] Supreme Court has placed strict limitations on municipal liability under § 1983." *Grech v. Clayton Cnty.,* 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). For one, a municipality "cannot be held liable [under 42 U.S.C. §1983] *solely* because it employs a tortfeasor." *Monell v. Department of Social Services,* 436 U.S. 658, 691 (1978) (emphasis added). Stated otherwise, "a municipality cannot be held liable under §1983 on a *respondeat superior* theory." *Id*. Instead, to state and ultimately prevail on such a claim, a plaintiff must plead and prove that the unconstitutional conduct resulted from either: (1) an officially promulgated [municipal] policy, or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality]." *Grech*, 335 F.3d at 1329. "This threshold identification of a custom or policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those

officials whose acts may fairly be said to be those of the municipality." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004).

No matter if the basis of the claim is an officially promulgated policy or an unofficially adopted custom, however, it must be the "moving force of the constitutional deprivation" before liability may attach. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 820 (1985) (internal quotation marks omitted). To this end, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Thus, not only must there be some degree of "fault" on the part of the municipality in establishing or tolerating the custom or policy, but there also must exist a causal link between the custom or policy and the deprivation. *City of Oklahoma City,* 471 U.S. at 824; *Grech,* 335 F.3d at 1330. Here, Sullenberger has failed to identify a custom or policy promulgated by the City or how that custom or policy caused his constitutional rights to be violated.

Although Sullenberger's theory for imposing §1983 liability on the City is unclear, he appears to premise his claim for municipal liability on the City's failure to train or supervise the Defendant Officers. *See* Compl., ¶ 26 ("The City of Coral Gables and Coral Gables Police Department has a duty to act with reasonable care (proper supervision and training of Officer Puga, Officer Nunez, Officer Flores), breached that duty and that duty caused irreversible damage to the plaintiff, Simon Sullenberger."). The Supreme Court has held that a municipality may be liable for failing to train or supervise its employees only in "limited circumstances." *City of Canton*, 489 U.S. 378 at 387; *see also Williams v. DeKalb Cnty.*, 327 F. App'x 156, 160–61 (11th Cir. 2009) ("A police department's failure to train or supervise its officers can constitute a 'policy'

sufficient to trigger governmental liability but only in limited circumstances[.]"). These circumstances arise when a city's "employees cause a constitutional injury as a result of the municipality's policy- or custom-based failure to adequately train or supervise its employees." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1188 (11th Cir. 2011).

Where, a municipality's alleged failure to adequately train or supervise is the purported basis for its liability under §1983, a plaintiff must plead and prove that the failure to train was relevant to the alleged misconduct and "amount[ed] to [a] deliberate indifference to the constitutional rights of persons with whom the police come into contact." *City of Canton*, *Ohio v. Harris*, 489 U.S. 378, 379 (1989). *See Johnson v. Israel,* 576 F. Supp. 3d 1231, 1262 (S.D. Fla. 2021) (Altman, J.). To satisfy the "deliberate indifference" element, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Johnson*, 576 F. Supp. 3d 1231 at 1262-63 (citing *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)). As a general rule, the Supreme Court requires allegations of "a pattern of similar constitutional violations by untrained employees." *Guzman v. City of Hialeah*, No. 15-23985, 2016 WL 3763055, at *4 (S.D. Fla. July 14, 2016). "Without notice that training or supervision is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a policy that will cause violations of constitutional rights." *Johnson*, 576 F. Supp. 3d 1231 at 1263.

"Establishing notice of a need to train or supervise is difficult." *Johnson*, 576 F. Supp. 3d 1231 at 1263 (quoting *AFL-CIO*, 637 F.3d at 1189). A municipality can be put on notice in two ways: (1) by establishing a pattern of similar constitutional violations by untrained or unsupervised employees; or (2) by showing that "the need for training is so obvious", that it can be said that the city policymakers have been deliberately indifferent to the need. *Id.* The latter situation is rare and

Case 1:22-cv-21830-RKA Document 26 Entered on FLSD Docket 11/21/2022 Page 14 of 26

CASE NO.: 1:22-cv-21830-RKA
DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

reserved for extreme cases, such as where a city provides firearms to its police officer but then fails to train them on the use of deadly force. *Id.*

In light of this standard, Sullenberger's § 1983 claim against the City is plainly deficient as the Complaint provides no factual enhancement to buttress any of these supposed negligent inactions by the City. Sullenberger fails to plausibly allege that there was *anything* wrong with the City's training or supervision. All Sullenberger alleges is that the City breached a duty to properly supervise and train the Officers. Compl., ¶ 26. The Complaint makes no mention at all of any City policies, customs, or practices of any kind, much less what, if anything, is improper about them. There is also no allegation that the City had notice of the need to train or supervise the Defendant Officers in some particular area. Sullenberger has presented no facts establishing a pattern of similar constitutional violations by other untrained or unsupervised officers. In light of these deficiencies, Sullenberger's claim against the City must be dismissed. *See e.g.*, *Johnson*, 576 F. Supp. 3d at 1263 (dismissing § 1983 claim against the city for failure to state claim because the complaint failed to identify a city policy or state how it was deficient); *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1272 (S.D. Fla. 2015) (dismissing a claim where the complaint did not "contain any allegations describing a particular training program, let alone allegations highlighting why such a training program is defective and how the defect is a widespread problem").

**B.   The Complaint Fails to State a §1983 Claim Against the Defendant Officers**

It is well settled that "[s]ection 1983 creates a private cause of action for deprivations of federal rights by persons acting under color of state law." *Laster v. City of Tampa Police Dept.*, 575 F. App'x 869, 872 (11th Cir. 2014). In order to sustain a cause of action under section 1983, a plaintiff must assert that (a) the defendant acted under color of state law, and (b) the defendant's conduct deprived the plaintiff of a right secured under the constitution or federal law. *Arrington v.*

*Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998). A section 1983 action requires specific allegations of involvement by state officials." *Wright v. TRW Credit Data*, 588 F. Supp. 112, 114, Case No. 83–3162–CIV–JLK (S.D. Fla. 1984). If these allegations are missing, a § 1983 claim cannot be maintained. Sullenberger's Complaint appears to allege both an unlawful seizure claim in violation of the Fourth Amendment and a violation of substantive due process rights under the Fourteenth Amendment. Compl., ¶ 32. Yet the facts as alleged do not state a cause of action for a violation under either scenario as related to any of the Officers.

### 1.  The unlawful seizure claim

Under the Fourth Amendment, an individual has a right to be free from "'unreasonable searches and seizure' … [and] an arrest is a seizure of the person." *See Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (citations omitted). The "reasonableness" of a seizure or arrest under the Fourth Amendment turns on the presence of absence of probable cause. *Id.* "Probable cause to arrest exists when the law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Skop v. City of Atlanta, GA,* 485 F.3d 1130, 1137 (11th Cir. 2007). "To determine whether an officer had probable cause to arrest an individual, [the court must] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citation omitted). The crucial question is what the officer reasonably believed under the totality of the circumstances. *See Davis v. City of Apopka*, 615CV1631ORL37KRS, 2016 WL 11699468, at *4 (M.D. Fla. Feb. 16, 2016).

Sullenberger has failed to state a claim for unlawful seizure against the individual Defendant Officers. As a matter of legal sufficiency, the Complaint lacks any allegations that

Defendant Officers were acting under color of state law when they purportedly violated Sullenberger's Fourth Amendment rights. In terms of the legal sufficiency of his pleadings, Sullenberger seemingly attempts to allege that Officer Flores lacked probable cause to arrest him, because "[he] did not point [his] gun at anyone." *Id.*, ¶ 21. Then, in a conclusory statement supported by nothing, says, "[t]he sworn statements that both Officers [Flores and Nunez] made on the Arrest report that justified their probable cause for arresting the Plaintiff never occurred." *Id.*, ¶ 22. Yet, Sullenberger acknowledges in his Complaint that he was holding a shotgun when both Officers arrived and claims he "loudly" announced this fact as they were coming into his yard. Compl., ¶¶ 12, 13. Sullenberger acknowledges both Officers were at the Residence due to a "Panic Alarm," which is designed to signify that a serious emergency, such as a burglary, was in progress. *Id.*, ¶2. In addition, when the Officers arrived, the outside of the Residence was "very dark, lit by a single light at the porch, with the streetlight not working." *Id.*, ¶9. There is nothing in the Complaint to indicate that, upon their arrival, Officer Flores or Officer Nunez knew who Sullenberger was, knew what his status was at the Residence, or knew that the shotgun he was holding in their direction was unloaded.

Ironically, Sullenberger alleges that when he noticed the presence of "someone" who seemingly appeared "out of nowhere" on his property, and who "could not be seen or identified" because they were "behind the large plants," he "feared for [his] safety." Compl., ¶¶ 12, 13. Officer Flores and Officer Nunez, who arrived at this dark dimly lit residence in response to a Panic Alarm only to notice an unidentified individual standing at the Residence with a shotgun pointed in their direction would have similarly had reason to fear for their safety (as would any other objectively reasonable officer under those circumstances). The totality of the circumstances set forth in the Complaint are enough to warrant a reasonable belief that the suspect may have committed or was

Case 1:22-cv-21830-RKA   Document 26   Entered on FLSD Docket 11/21/2022   Page 17 of 26

CASE NO.: 1:22-cv-21830-RKA
DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

committing a crime. In short, Sullenberger has presented no facts establishing that Officers Flores or Nunez lacked probable cause to arrest him or otherwise engaged in his unlawful seizure. In light of these deficiencies, Sullenberger's unlawful seizure claim against Officers Flores and Nunez must be dismissed. *See, e.g., Ingram v. Kubik*, 30 F.4th 1241, 1251 (11th Cir. 2022), *cert. dismissed,* 142 S. Ct. 2855 (2022) ("Because [officers] had probable cause to seize [plaintiff], [officers] are entitled to dismissal of the unlawful-seizure claim.").

As for Officer Puga, there is no allegation that he participated in Sullenberger's seizure or arrest. To the contrary, the Complaint suggests that Officer Puga was the "Lead Investigating Officer" assigned <u>after</u> Sullenberger's arrest who "took sworn statements from Officer Nunez and Officer Flores." Compl., ¶23. Accordingly, Sullenberger's claim of "unlawful seizure" as to Officer Puga is also subject to dismissal. *See Baker v. Welker*, 09-60169-CIV, 2009 WL 10675098, at *3 (S.D. Fla. May 29, 2009) (noting "an unlawful seizure claim cannot be supported based on the facts alleged in his pleading, as [plaintiff] was never successfully seized by [the defendant officer].").

### 2. The due process claim

Sullenberger does not say in his Complaint whether he is asserting a substantive or procedural due process violation. *See* Compl., ¶ 32 ("Plaintiff brings this action under 42 U.S.C. §1983 for … violation of due process under the Fourteenth Amendment"). In reviewing his Complaint, however, the <u>only</u> other reference to a due process violation is found in paragraph 23 where Sullenberger states, "Officer Puga's intentional misconduct involving Brady violations which resulted in loss and damage may be sued under 42 U.S.C. § 1983 for violation of due process under the Fourteenth Amendment of the United States Constitution." *Id.*, ¶ 23. Sullenberger then suggests Puga failed to disclose, or intentionally failed to discover, favorable evidence material to

his defense. Sullenberger claims in a conclusory fashion that Officer Puga "acted in bad faith to collect and turn over helpful evidence" and "failed to request and review home surveillance video and ask [Sullenberger] any questions nor speak to witnesses." *Id.* He also claims Officer Puga "did not turn over evidence which was easily available to him and favorable to [Sullenberger]. *Id.* Lastly, Sullenberger asserts "[i]f Officer Puga would have conducted a thorough investigation per CGPD policy's / SOP's his report would have concluded that no crime was committed as he states in his deposition." *Id.* Accordingly, it appears Sullenberger is attempting to assert a procedural due process violation based on a *Brady* nondisclosure – only as to Officer Puga. No further due process violations have been asserted about Officer Nunez or Officer Flores anywhere throughout the Complaint.

Sullenberger fails to state a claim for a procedural due process violation as to Officer Puga. Under § 1983, to state a due process claim based on a law enforcement officer's failure to share *Brady* material, it must be alleged that: (i) law enforcement officers withheld evidence from the prosecutor such that the prosecutor could not and did not provide this evidence to the accused-plaintiff; (ii) in withholding the evidence from the prosecutor, the law enforcement officers were acting in bad faith; (iii) the evidence withheld favored the accused-plaintiff and material in that it was exculpatory or would have been useful to impeach a significant government witness; (iv) the prosecutor's deadline to produce *Brady* evidence expired; and (v) the accused-plaintiff suffered a deprivation of liberty caused by prosecutor's failure to disclose the evidence withheld by the law enforcement officers. *See Whidden v. Roberts*, 5:19-CV-80-MCR/MJF, 2020 WL 6566961, at *6 (N.D. Fla. July 28, 2020), *report and recommendation adopted,* 5:19CV80-MCR/MJF, 2020 WL 6566322 (N.D. Fla. Nov. 9, 2020) (cases cited there).

"Various courts have held that a plaintiff cannot state a claim for a *Brady* violation 'unless the case goes to trial and the suppression of exculpatory evidence affects the outcome.'" *Id.* at \*5 (quoting *Becker v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007)). Even if there had been a trial, "other courts have held that there is no *Brady* violation absent a conviction." *Id.* at \*6. *See also United States v. Newton*, 44 F.3d 913, 918 (11th Cir. 1994) ("*Brady* rule protects a defendant from erroneous convictions…"). "Thus, absent a conviction, there is no *Brady* violation cognizable in a section 1983 action." *Id. See also Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998) (holding that there was no *Brady* violation where the criminal defendant "was never convicted and, therefore, did not suffer the effects of an unfair trial").

Sullenberger has not alleged he was tried, much less convicted. There is also no allegation that the information Officer Puga purportedly withheld was not delivered to a prosecutor, or allegation showing what that "undisclosed" material would have consisted of such that it would have been material to his defense. As to any other deprivation of liberty he may have suffered, Sullenberger does not say. He states, in a conclusory fashion once again, that his "illegal detention" and "arrest" have put him at a disadvantage when applying for Fire Departments. Compl., ¶ 1. Because Sullenberger has failed to assert a cause of action for a procedural violation of due process based on a *Brady* violation as to Officer Puga, and he has raised no similar or alternate due process violation as to Officers Flores and Nunez, dismissal as to this claim is warranted as to all three Defendant Officers. *See Whidden,* 2020 WL 6566961, at \*6 (granting defendants motion to dismiss where plaintiff failed to state a due process claim based on a purported *Brady* violation).

## IV.  THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY FOR ACTIONS TAKEN IN THEIR OFFICIAL CAPACITY AS POLICE OFFICERS

Sullenberger's 42 U.S.C. § 1983 claims for supposed violations of his Fourth and Fourteenth Amendment rights are properly subject to dismissal because the Defendant Officers

are entitled to qualified immunity.

Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity confers not only a defense to liability, but also immunity from suit; it shields government officials from the costs and burdens of trial and discovery, and thus it should be decided as early as possible in the lawsuit. *See Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985) ("[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery" because that immunity is "effectively lost if a case is erroneously permitted to go to trial"); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.").

The doctrine of qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The protection of qualified immunity is far-reaching, and it "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (citing *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)). Indeed, the "driving force" behind the creation of the doctrine of qualified immunity is a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987)).

This purpose is furthered by the objective legal reasonableness standard used to determine

whether the government official is entitled to qualified immunity. *See Anderson*, 483 U.S. at 639 ("whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.") (internal citation omitted). Under this standard, a government official performing discretionary functions is protected by qualified immunity if a "reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Hardin v. Hayes*, 957 F.2d 845, 848 (11th Cir. 1992) (citing *Anderson*, 483 U.S. at 641).

The defense of qualified immunity is ordinarily the default stance, and it is Plaintiff's burden to strip Officers Flores, Nunez and Puga of its application because "[o]nce an officer raises the defense of qualified immunity, the plaintiff bears the burden to show that the officer is not entitled to it." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).  *See also Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (in examining the factual allegations of civil rights complaints, when ruling on a motion to dismiss on qualified immunity grounds, the court must "keep in mind" the fact that official conduct is "generally accord[ed]" a "presumption of legitimacy") (quoting *United States Dep't of State v. Ray*, 502 U.S. 164, 179 (1991)). Therefore, for qualified immunity to apply, the Officers must initially "show that [they were] acting within the scope of [their] discretionary authority at the time the allegedly wrongful acts occurred." *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003) (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194) (11th Cir. 2002)).

After this initial showing, the burden then "shifts to the plaintiff to show that the grant of qualified immunity is not appropriate." *Durruthy*, 351 F.3d at 1087; *Gonzalez*, 325 F.3d at 1234.

Therefore, to "deny qualified immunity at the motion to dismiss stage, [the Court] must conclude both that the allegations in the complaint, accepted as true, establish a constitutional violation and that the constitutional violation was 'clearly established.'" *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019) (emphasis in original). Sullenberger cannot meet his burden.

### A. **The Defendant Officers Engaged in a Discretionary Capacity at All Times**

According to the Complaint, Flores and Nunez were, at all times, City of Coral Gables police officers who were dispatched by "the City of Coral Gables Police" to investigate a triggered home burglary panic alarm at his Residence. Compl., ¶¶ 2, 4. Officers Flores and Nunez responded to the triggered alarm in this capacity and were identified to Sullenberger as "Coral Gables Police Officer[s]" in the moments preceding Sullenberger's arrest. *Id.* ¶¶ 7, 14. Likewise, Sullenberger acknowledges Officer Puga was acting in his capacity as the "Lead Investigating Officer" for the City of Coral Gables responsible for investigating Sullenberger's arrest. Compl., ¶ 23.

There is therefore no dispute that Flores, Nunez and Puga were all acting in their official capacity as sworn police officers for the City of Coral Gables when the discretional decision was made to arrest Sullenberger. *See Turk v. Crytzer*, 8:18-CV-2490-CEH-TGW, 2021 WL 4478616, at *6 (M.D. Fla. Sept. 30, 2021) (applying qualified immunity to police officers who responded to triggered alarm, thereby finding that they were acting in their discretionary authority). Arrests by police officers fall within the discretionary authority function. *See, e.g., Lee*, 284 F.3d at 1194 ("there can be no doubt that [the officer] was acting in his discretionary authority when he arrested [the plaintiff]."); *Sebastian*, 918 F.3d at 1307 ("Here, no one disputes that Ortiz was acting within the scope of his discretionary authority when he arrived at the scene and ultimately arrested Sebastian."); *Manners v. Cannella*, 891 F.3d 959, 967-68 (11th Cir. 2018) ("There is no dispute that the officers were acting within their discretionary authority when they conducted a traffic stop

and later arrested Manners."). As a result, Plaintiff bears the burden to abrogate the protections of qualified immunity afforded the Defendant Officers.

### B. There Was Probable Cause to Seize and Arrest Sullenberger

For all the reasons previously stated there was probable cause, or at least arguable probable cause, for the Officers to seize and arrest Sullenberger. *See* supra at pp. 14 thru 17. To show probable cause, the arresting officer need not know facts that would prove beyond a reasonable doubt the guilt of the person charged; the determinative factor is whether the officer, at the time of the arrest, knew of sufficient facts to cause a prudent person to belief, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an crime. *Ball v. City of Coral Gables*, 548 F. Supp. 2d 1364, 1376 (S.D. Fla. 2008), *aff'd*, 301 F.App'x 865 (11th Cir. 2008). *See also Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). The viewpoint, once again, is from that of a "prudent cautious police officer on the scene at the time of the arrest." *Miami-Dade Ct. v. Asad*, 78 So. 3d 660, 669 (Fla. 3d DCA 2012). Given sudden and ever evolving circumstances, law enforcement officers must be afforded some latitude for error in the probable cause determination. *Lee v. Geiger*, 419 So. 2d 717 (Fla. 1st DCA 1982)

As to the Complaint, its allegations and attachments establish Officers Nunez and Flores had ample probable cause or, at the bare minimum, arguable probable cause to arrest Plaintiff. The Officers came upon a dark and poorly lit scene compromising visibility. Compl., ¶ 9. Under this setting, Officers Flores and Nunez encountered Sullenberger outside the residence with a shotgun in hand while responding to the triggered home panic alarm. *Id.*, ¶¶ 4, 6- 9, 12-13. Sullenberger also yelled at them, warning them not to approach because he was armed. *Id.*, ¶¶ 12. Sullenberger did not identify himself to Flores or Nunez. *Id.*, ¶ 21. While he alleges that a radio transmission at some point had identified Sullenberger as the homeowner (*see Id.*, ¶ 17), there are no factual

allegations about who the radio transmission came from, whether the radio transmission described the homeowner as Sullenberger, and at what point in the series of events Officers Flores and Nunez received the transmission. In fact, Sullenberger never alleges that he identified himself to Officers Flores and Nunez as the homeowner or provided them with proof of his identify.

The totality of the facts and circumstances within the Officers' knowledge that night sufficiently warrant a reasonable person to believe that, more likely than not, Sullenberger had committed a crime – including resisting an officer with violence pursuant to §843.01, Fla. Stat. – and therefore Officers Flores and Nunez had probable cause or arguable probable cause to seize and arrest him. No similar unlawful seizure allegations have been asserted against Officer Puga. As a result, qualified immunity applies to Officers Nunez and Flores on Sullenberger's claim of unlawful seizure.

### C. Sullenberger Has Not Shown that a *Brady* Violation Ever Occurred

When confronted with a government official's invocation of qualified immunity, courts have been instructed by the Supreme Court to first decide the threshold issue – before addressing whether the particular right was "clearly established" when it was allegedly violated – of whether the official has deprived the plaintiff of a constitutional right at all. *See Porter v. White*, 483 F.3d 1294, 1302 (11th Cir. 2007) (cases referenced).

As shown above, there is no merit to a claim of procedural due process based on a *Brady* violation. *See supra* at pp. 17 thru 19. Not only is there no allegation made that the material purportedly withheld by Officer Puga was material for *Brady* purposes, it is irrelevant where Sullenberger has not – and, cannot – show that this information was withheld from any prosecutor or that Sullenberger was ultimately tried and convicted because of this alleged *Brady* nondisclosure. *Id.* Because Sullenberger's due process violation claim against Officer Puga fails

on its merits, this Court need not reach the second "clearly established" prong of the qualified-immunity analysis. *See e.g.*, *Porter*, 483 F.3d 1294. Accordingly, Officer Puga is immune from suit by qualified immunity because there is no indication that he ever deprived Sullenberger of his constitutional due process rights.

## V.   PUNITIVE DAMAGES IMPROPERLY INCLUDED AGAINST THE CITY

Sullenberger seeks punitive damages against the City "for recklessly disregarding [his] Constitutional right to be free of unlawful seizures." Compl., ¶ 34. Even though the Complaint does not assert how the City's conduct amounted to his "unlawful seizure," this plea for relief is improper because the City is immune from punitive damages arising from a §1983 claim. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981) ("[P]unitive damages are not recoverable against a municipality in a section 1983 suit."); *Cline v. Broward Cnty. Sheriff's Off.*, No. 05-61909-CIV, 2007 WL 2453558, at *4 (S.D. Fla. Aug. 23, 2007) (finding a § 1983 plaintiff "cannot recover punitive damages since counties or municipal defendants are immune from their imposition"); *Brooks v. Jenne*, 04-60271-CIV, 2005 WL 5488060, at *4 (S.D. Fla. July 15, 2005) ("Punitive damages are not available against municipalities"). This is true even where the City is sued for a wrong committed by an employee. *Fisher v. City of Miami*, 172 So. 2d 455, 457 (Fla. 1965); *Berek v. Metro. Dade Cty.*, 396 So. 2d 756, 759 (Fla. 3d DCA 1981) (not allowing punitive damages). This rule has also been codified. §768.28(5)(a), Fla. Stat. ("liability [as to the state and its agencies] shall not include punitive damages"). As a result, Sullenberger's request for punitive damages must be dismissed.

## CONCLUSION

Based on the foregoing arguments and authorities, the City and Defendant Officers ask this Court to dismiss any and all claims against them in Sullenberger's First Amended Complaint and grant them any such further relief to which they are entitled.

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By: */s/ Christine L. Welstead*

**Christine L. Welstead, Esq. (FBN# 970956)**
Christine.welstead@bowmanandbrooke.com
**Stephanie Simm, Esq. (FBN# 15486)**
Stephanie.Simm@bowmanandbrooke.com
**Carolina S. Pinero, Esq. (0119335)**
Carolina.Pinero@bowmanandbrooke.com
Two Alhambra Plaza, Ste. 800
Miami, Florida 33134
Tel: (305) 995-5600; Fax: (305) 995-6100

and

Israel Umberto Reyes, Esq.
Florida Bar No. 47627
ireyes@reyeslawfirmpa.com
Christopher Israel Reyes, Esq.
Florida Bar No. 94301
creyes@reyeslawfirmpa.com
**THE REYES LAW FIRM, P.A.**
343 Alcazar Avenue
Coral Gables, FL 33134

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** on this **21st** day of November, 2022, the undersigned filed the foregoing with the Clerk of the Court for the United States District Court, Southern District of Florida, by using the CM/ECF system and that the foregoing document is being served this day on Plaintiff Simon Sullenberger, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

By: */s/ Christine L. Welstead*
**Christine L. Welstead, Esq.**