Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-21830-RKA

SIMON GERALD SULLENBERGER

pro se

*Plaintiff,*

v.

CITY OF CORAL GABLES, a political
subdivision of the State of Florida; JORGE
PUGA, individually and in his capacity a
Police Officer for the City of Coral Gables;
NATALIE FLORES, individually and in her
capacity as a Police Officer for the City of
Coral Gables; JECABSEEL NUNEZ,
individually and in his capacity as a Police
Officer for the City of Coral Gables.
*Defendants,*

PLAINTIFFS MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS
MOTION TO DISMISS SECOND
AMENDED COMPLAINT

FILED BY _____ D.C.

MAR 0 6 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS SECOND AMENDED COMPLAINT

### TABLE OF CONTENTS

INTRODUCTION ....................................... 2
BACKGROUND ........................................ 4

ARGUMENTS

I. ................................................................ 4
    A. ........................................................ 5
    B. ........................................................ 6
    C. ........................................................ 6
II. ............................................................... 9
III. .............................................................. 9
    A. ........................................................ 11
    A. Continued ..................................... 13
B. .............................................................. 16
    B. Continued ........................ 17, 19, 21
IV. ............................................................. 24
    A. ........................................................ 24
    B. ........................................................ 25
    C. ........................................................ 26

1

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

D. ....................................................27
V. ......................................................27
A. ....................................................27
VI. .........................................................30
CONCLUSION .........................................30

## INTRODUCTION

The Plaintiff, SIMON GERALD SULLENBERGER, is a distinguished individual with an impressive record of community service and professional accolades of community service and professional achievements. He earned the rank of Eagle Scout and is a licensed New York State Firefighter and Emergency Medical Technician. Additionally, he has held the esteemed position of Chief and Alumna of the Coral Gables Fire Department Explorer Program. Throughout volunteering career, he has accumulated over 7000 hours of community service.

Sullenberger's civil action alleges assault, battery, false imprisonment, official misconduct, active concealment of official misconduct, intent to deceive, violations of §1983 and §1985, and malicious prosecution committed by: OFFICER NUNEZ and OFFICER FLORES. False imprisonment, official misconduct, active concealment of official misconduct, intent to deceive, violations of §1983 and §1985, and malicious prosecution by Lead Investigator OFFICER PUGA and THE CITY OF CORAL GABLES ("the City"). The aforementioned officers, while acting within the scope of their duty, violated clearly established law (Fla.stat.838.022(1)(a), 918.13(1)(b)) and committed perjury in the Arrest Affidavit and Supplemental Reports ("A-form") (Exhibit A), which were then submitted to the City's Attorneys, Mrs. Miriam Ramos ("Mrs. Ramos") and Mr. Israel Reyes ("Mr. Reyes"), and subsequently to the State Attorney's Office ("SAO") and Justice Advocate ("JA") Program for prosecution.

Sullenberger alleges that the A-form and Supplemental Reports are well written and carefully constructed documents, supported only by the accounts and testimony of Officer Nunez and Officer Flores. It is evident the Defendants collaborated to legitimize Sullenberger's arrest.

67  Sullenberger's home surveillance ("CCTV") exonerated him and exposed Officer Nunez's and

68  Officer Flores's willful actions, and willingness to perjure. Despite this evidence, Sullenberger

69  was subjected to 3 years of prosecution. Officer Nunez and Officer Flores provided false testimony

70  during their depositions, with intent to deceive, and Officer Puga admitted in deposition CCTV

71  does not correspond with the A-form he prepared. Mrs. Ramos and Mr. Reyes reviewed the CCTV

72  and inexcusably did not challenge the veracity of the Defendants' sworn statements. The City

73  neglected to provide Brady Material of perjury to the prosecution. Instead, willfully suppressed

74  said Brady Material and continued the prosecution of Sullenberger, causing significant continuous

75  harm, emotional distress and irreparable harm to his reputation and character.

76      On or around March 2018, the SAO and the City utilizing the JA Program offered

77  Sullenberger's counsel a verbal offer to drop his charges for not pursuing a civil action against the

78  Defendants. Sullenberger refused to relinquish his due process right and was subsequently

79  threatened with harsher charges and maximum mandatory sentencing. It appears the City's JA

80  Program requires individuals to relinquish their due process rights to pursue civil action,

81  conceivably violating 18 U.S.C. § 242 and possibly raising an Abuse of Purpose claim.

82      Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994), established that § 1983

83  liability requires an action pursuant to an official policy or custom that causes a constitutional

84  violation. Sullenberger emphasizes that the City is accountable for the unconstitutional practices

85  of the JA Program, which resulted in the malicious prosecution of Sullenberger. In support of this

86  claim, Sullenberger cites *Phelan v. City of Coral Gables*, 415 So. 2d 1292, 1295 (Fla. 3d DCA

87  1982), which establishes that the State Attorney's filing of an information in a criminal prosecution

88  does not inherently imply probable cause but rather provides reasonable grounds for prosecution.

89  The Defendants are accused of willfully submitting falsified A-form with the deliberate intent of

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

90   initiating a prosecution against Sullenberger to coerce him into waiving his civil lawsuit against

91   the Defendants through the JA Program.

92        Absence integrity, the Defendants cannot rely on the fabricated A-form/incident

93   reports/supplemental reports, false testimony and inferences in their favor to support their Motion

94   to Dismiss. For over 13 months, the SAO and the City failed to provide material evidence that was

95   necessary for Sullenberger defense. Sullenberger's counsel had to file a Motion to Compel

96   Discovery to the SAO to release the evidence.

97        As evidenced by the ultimate dismissal of all charges by the SAO, Sullenberger's ab initio

98   arrest was made without probable cause. It is evident, under the Obviousness Standard, that no

99   reasonable jury could dispute this conclusion. Therefore, Sullenberger respectfully requests the

100  Defendants' Motion to Dismiss the Second Amended Complaint ("SAC") be denied. In support of

101  this request, Sullenberger submits the following:

102                                   **BACKGROUND**

103        On December 2, 2017, Sullenberger was arrested, his firearm seized and sustained injuries

104  from Officer Nunez and Officer Flores. Charged with crimes he did not commit by the Defendants

105  and the City's JA Program, emphasizing that the arrest and charges were a result of fabricated

106  testimony, failure to investigate, failure to follow procedures, protocols, and abuse of power.

107                                   **ARGUMENTS**

108  The Defendants arguments on their motion to dismiss are **bold**, **underlined** and listed as:
109  <u>I, II, III… A. B. C...</u> – followed by Sullenberger's position, a. b. c., 1) 2) 3)…

110  **I. <u>Dismissal with prejudice is required where Sullenberger's state and federal claims are
111  time-barred. "Where, as in this case, it is apparent from the face of the complaint that the
112  claim is time barred, a Rule 12(b)(6) dismissal with prejudice on statute of limitations
113  grounds is appropriate."</u>** – False.

114  a. The Defendants' intent to deceive, active and fraudulent concealment (Equitable estoppel),

115     ongoing serious harm, and official misconduct, including arrest based on fabricated probable

                                          4

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

116   cause and willful disregard for Sullenberger's civil rights, justify Tolling statute of limitations.

117   Sullenberger criminal case, which took place during the COVID-19 Global Pandemic, lasted for

118   3 years, resulting in continuous harm to Sullenberger. The continuous harm rule may be applied

119   to toll the statute of limitations and acknowledges that harm can occur over an extended period,

120   and that the statute of limitations may not start until the harm has ended, which it will never.

121   b. Additionally, the City and Coral Gables Police Department ("CGPD") is actively and

122   intentionally Tolling Internal Affairs ("IA") investigations. The intentional Tolling of IA

123   investigations should allow for Equitable Tolling of the statute of limitations. Sullenberger, has

124   not, through the exercise of reasonable diligence, obtained IA evidence of the obvious official

125   misconduct by the Defendants.

126   c. Sullenberger has provided the Defendants with timely notice of these claims and Sullenberger's

127   counsel was pursuing a state civil case on the same underlying elements.

128   d. There has been no showing of prejudice to the Defendants, and Sullenberger has acted with

129   reasonable diligence and good faith in pursuing his claims.

130   **A. <u>Sullenberger's Federal Claims are barred by the statute of limitations.</u>** – False.

131   a. Sullenberger recently became aware of his permanently damaged FBI record causing serious

132   harm to his ability to seek employment in the civil service career he has spent a majority of his

133   life involved in with over 7,000 of community service in the Fire Department.

134   b. Ethical Worlds of Large-Firm Litigators: Preliminary Observations, 67 F ORDHAM L. R EV .
135   709, 736 (1998). Plaintiff was falsely arrested for a crime he did not commit. The false arrest
136   resulted in Plaintiff reputation being severely damaged, causing him to suffer from emotional
137   distress and financial losses. The arrest caused Plaintiff to suffer serious harm, such as severe
138   emotional distress and a damage to his reputation, the statute of limitations does not apply. The
139   courts have stated that "the false arrest, accompanied by the loss of employment, and the stigma
140   associated with arrest, constituted a serious harm." <u>The statute of limitations does not apply</u> in
141   a false arrest case where the defamation of character is considered a serious harm to the Plaintiff.

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

142    c. Because Sullenberger has suffered serious harm as a result of the Defendants ab initio arrest,

143    including: harm to his reputation, loss of employment prospects, damaging FBI criminal record,

144    significant emotional distress, serious injury, and continuous harm; the statute of limitations

145    should not apply.

146    **B. Sullenberger's state court action was not removed, it was dismissed.** – False.

147    a. The Defendants appear to be implying that the case was dismissed in their favor, when in reality,

148    Sullenberger dismissed the state court action because of unfair bias and initiated a new action

149    in federal court, which has original jurisdiction. Sullenberger acknowledges the court's

150    clarification [DE57] that the civil cover sheet error won't impact the SAC and respectfully

151    requests the court treat his SAC as a new action; this will not prejudice the Defendants.

152    **C. Counsel repeatedly projects an assumption in this case that the Plaintiff has not stated a**
153    **claim.** – False.

154    1) Sullenberger's claim are rooted in the Defendants' official misconduct, deliberate fabrication of

155    evidence active concealment of official misconduct. Sullenberger verbally informed the

156    Defendants, who were not visible, unidentifiable and in the dark, not to enter the property.

157    Sullenberger could not confirm who was on the other side of the 7-foot bushes and the lack of

158    police cars, arrival almost half an hour after a panic alarm, added to the confusion. Sullenberger

159    quickly withdrew himself and his Shotgun from the immediate area and retreated backwards

160    gaining a safe distance. Officer Nunez entered the property without permission, after being

161    clearly instructed not to do so. Officer Nunez used Dr. Santamarina, Sullenberger's neighbor,

162    as a human shield and put his life in a State Created Danger by pointing his gun directly at his

163    back and or head area. Officer Flores called in "Homeowner with a shotgun" and Officer Nunez

164    called in "QRU" (situation OK) to his dispatcher (Audio 17008314, 2000-2015 Hrs). Dr.

165    Santamarina, Sullenberger, his mother and neighbors stated to the officers, multiple times, that

Sambin Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

166   Sullenberger was the resident. Officer Nunez's and Flores's unnecessary use of force resulted

167   in severe injuries, lasting harm, and a gross violation of Sullenberger's civil liberty. Their failure

168   to follow policy, de-escalate and obvious lack of training were contributing factors that lead to

169   their use of excessive force and Sullenberger's subsequent arrest.

170   2)  A response time of almost half an hour to a panic alarm is unacceptable. Any reasonable and

171   prudent human would conclude no response was expected and would continue living.

172   Sullenberger's civil action claims arise from the alleged assault, battery, false imprisonment,

173   official misconduct, active concealment of misconduct, intent to deceive, violations of §1983

174   and §1985, and malicious prosecution. Therefore, Sullenberger has the right to exclude any

175   evidence related to the false panic alarm.

176   3)  Absence a body camera policy, CGPD enabled the Defendants to commit violations with

177   impunity, further bolstering Sullenberger's claims. After their negligent response, the officers

178   had no reason to suspect that Sullenberger was involved in criminal activity, and a reasonable

179   jury would conclude they lacked probable cause to arrest him. Despite Officer Flores verbally

180   confirming on police radio that Sullenberger was the lawful resident of the property, the Officer

181   Nunez and Officer Flores continued to detain and arrest him without legal justification.

182   4)  Officer Puga's A-form did not allege any criminal activity on the part of Sullenberger, who was

183   legally armed, not suspected of a crime and had not committed a crime, thus Officer Nunez and

184   Officer Flores did not have the right to ask him to drop his weapon or produce identification.

185   5)  *Graham v. Connor* provides a framework for examining the actions of Officer Nunez and

186   Officer Flores. Sullenberger was legally armed and had the right to possess a firearm on the

187   property, yet he was unjustly arrested. The officers' overreaction upon hearing Sullenberger

188   announce his legal firearm, asking them to stay out of his property, resulted in baseless charges

Simon Gerald Sullenberger
CASE NO: 1:22-cv-21830-RKA

832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

189   against him. Moreover, the use of excessive force during the arrest caused Sullenberger to suffer

190   severe, continuous and lasting harm.

191   6)   The alleged fabrication of the A-form by Officers Nunez, Flores and Puga to create probable

192   cause for the arrest, raises serious concerns about the officers' conduct. The fact that

193   Sullenberger recently discovered his damaging FBI record that does not reflect his actions, and

194   that the officers have not been charged with official misconduct and perjury under Florida

195   Statute 837.02, is further evidence of the injustice in this situation.

196   7)   Even more alarming is the continued intentional Tolling of IA Investigations. The first IA

197   complaint was submitted in March 7, 2018 and canceled without initiation and the second

198   complaint filed March 24, 2021 is still pending. The investigations conducted by the City IA

199   department would have yielded crucial evidence to support Sullenberger's innocence and

200   implicate the officers. Unfortunately, Sullenberger was denied two investigations that would

201   have uncovered important information for his defense. Despite the City's policy of 180 days to

202   conclude IA investigations, the City and the CGPD continue to delay Sullenberger's complaints.

203   The City has failed to complete the IA investigation within policy, as confirmed by the

204   Defendants in [DE64].

205   8)   The Defendants cannot claim that there was probable cause for Sullenberger's arrest, as they are

206   estopped from relying on the fabricated probable cause. This fabricated evidence was

207   intentionally and knowingly included by the Defendants, which led to Sullenberger's arrest and

208   the prosecution.

209   9)   Sullenberger has clearly stated claims and has taken legal action against the Defendants under

210   42 U.S. Code § 1983, which provides a legal remedy for individuals who have had their

211   constitutional rights violated by persons acting under color of law. The Defendants' willful

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

212    actions in fabricating evidence, using excessive force, and engaging in malicious prosecution,

213    constitute a clear violation of Sullenberger's constitutional rights.

214   10) Sullenberger has a strong case against all the Defendants under 42 U.S. Code § 1985, which

215    prohibits conspiracies to interfere with civil rights. The Defendants' deliberate and coordinated

216    actions with their supervisors and the City's counsel acting as the City, conspired to violate

217    Sullenberger's rights, including the fabrication of evidence and the use of aggressive Rambo-

218    Lawyering tactics, demonstrate a clear, deliberate conspiracy to interfere with Sullenberger's

219    civil rights and Liberty.

220   **II.  The SAC is an impermissible shotgun pleading** – False.

221   a. Sullenberger clearly states "Cause of Action" in the SAC and names the Defendants: Count I –

222    Assault against Defendants Officer Flores and Officer Nunez. Count II – Battery against

223    Defendants Officer Flores and Officer Nunez. Count III – False Imprisonment against all

224    Defendants. Count IV – Section 1983, 1985 against all Defendants. "The City of Coral Gables

225    the aforementioned Officers". (paragraph 30). Count V – Malicious prosecution: "the Defendant

226    officers in their official capacity as police officers for the City, initiated a criminal prosecution

227    against Sullenberger." The Malicious prosecution was led by the City's attorneys and JA

228    Program.

229   **III.The SAC fails to state a claim under either 42 U.S.C. § 1983 or § 1985 as to any defendant**
230        **for any cognizable civil rights violation.** – False.

231   a.  The Defendants intentional misconduct, submitting a fabricated A-form, commencing

232    prosecution against Sullenberger, misleading magistrates, causing a malicious prosecution,

233    rendered devastating constitutional injury to Sullenberger and his family. Sullenberger's

234    allegations, when proven, will demonstrate that the Defendants violated Sullenberger's Fourth

235    Amendment right to be free from unreasonable seizures and his Fourteenth Amendment right

236    to due process of law. Sullenberger's § 1983 claim was further aggravated by the City, Mrs.

237    Ramos and Mr. Reyes, acting as Special Counsel for the City and GGPD, who was involved

238    early on and in his own statement has indicated that he aggressively pursues maximum

239    sentencing and punishment.

240  b.  Without the CCTV evidence supporting Sullenberger's innocence, it is reasonable to assume

241    that the City, prosecutor, Mrs. Ramos, Mr. Reyes, and Defendant officers would have

242    aggressively pursued prosecution against Sullenberger, seeking two life sentences for crimes he

243    did not commit, relying on Officer Nunez's and Officer Flores's sworn to A-form and Officer

244    Puga's inadequate investigation.

245  c.  Sullenberger is appalled by the Defendants, Mrs. Ramos and Mr. Reyes's ability to conceal the

246    truth and lie without consequences in the state court and finds it incomprehensible that they can

247    do so with impunity.

248  d.  In fact, one of the primary reasons for bringing this civil action in federal court is to prevent

249    them from using the same tactics here. The City and its counsel, engaged in Rambo-Lawyering

250    tactics as seen in this letter (Exhibit B), and filing a "section 57.105 Motion for sanctions against

251    the Plaintiff, Simon Sullenberger." (Exhibit C) This motion requested that the court award

252    attorney's fees and costs under Florida Statutes 57.105, § 57.105 (2020), for allegedly frivolous

253    filings made by Sullenberger. However, this motion was filed in bad faith to intimidate

254    Sullenberger and evade accountability for the Defendants' malicious and unconstitutional

255    behavior.

256  e.  The Defendants' Motion for Sanctions against Sullenberger omitted crucial details, such as the

257    officers arriving on foot, with no police cars, almost half an hour after the alarm, dressed in dark

258    clothing, and failing to identify themselves. Despite Sullenberger communicating through the

832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

259  bushes not to enter the property, the officers entered without consent. Sullenberger followed the

260  officers' requests. Then, Officer Nunez and Officer Flores failed to deescalate, resulting in

261  Sullenberger being seriously injured.

262  f.  Furthermore, the Defendants' Counsel took an outrageous step by attempting to strip

263  Sullenberger of his beneficial expungement of criminal records in the state court case. It is a

264  blatant violation of Sullenberger's legal rights and an attempt to impede his pursuit of justice

265  for the harm inflicted upon him. The Defendants' Counsel stooped to a new low by requesting

266  Judge Maria de Jesus Santovenia in the 11th Circuit to revoke Sullenberger's expungement on

267  the very day he sought to dismiss the state case, informing the court of his new federal civil

268  action. This behavior is reprehensible and undermines the very foundations of the justice

269  system. Fortunately, the judge had the wisdom to inform the Defendants' Counsel, Ms. Christine

270  Welstead, that she could file her Motion for Relief from the Expungement order in federal court.

271  g.  It is pertinent to note that Sullenberger's counsel was in possession of a Subpoena for

272  Deposition directing the appearance of Mr. Reyes on Wednesday, January 29, 2020 at 9:30am.

273  The purpose of said deposition was to investigate Mr. Reyes' role in the offer made by SAO,

274  wherein criminal charges against Sullenberger would be dropped in exchange for a waiver of

275  civil rights to pursue legal action against the Defendants. Mr. Reyes, however, failed to attend

276  the deposition, and provided a belated cancellation notice at 10:03am, 33 minutes late. Causing

277  significant harm to Sullenberger's' criminal prosecution, discovery in said prosecution and

278  additional financial damages.

279  A.  **The SAC fails to state a § 1983 claim against the city.** – False.

280  a.  The City employed the Defendant officers acting within the scope of their employment, in their

281  official capacity as Law Enforcement Officer, acting under color of state law, their negligent

282   actions deprived Sullenberger's constitutional right to be free from seizure, compounded by

283   their intentional misconduct, willful and wanton actions, and intentional harmful acts against

284   Sullenberger.

285   b.  If the City provided the requested information from IA, Sullenberger could have added:

286   1)  <u>Monell</u>: Sullenberger has been unable to obtain information from the City that is necessary to

287        pursue the claim. Sullenberger has only received a response from the City after filing a motion

288        to compel [DE55] but has received nothing from the City's IA's.

289   2)  <u>Negligence</u>: Respondeat Superior.

290   3)  <u>Failure to Train or Supervise</u>

291   4)  <u>Municipal Liability/Official Policy or Custom</u>: Ratification.

292        The City's JA Program, Mrs. Ramos and Mr. Reyes, violate the right to due process and

293        administer "deals" to citizens that the City has unlawfully arrested, which violates Florida

294        Rules of Professional Conduct 4-3.4(g) and 4-8.4(a)(c)(d). See Dr. Santamarinas Release

295        Agreement (Exhibit D). The City maintained a policy not mandating beneficial body-worn

296        cameras by its law enforcement officials. When City attorneys Mrs. Ramos and Mr. Reyes,

297        viewed Sullenberger's CCTV, it's reasonable to conclude that they witnessed the officers'

298        sworn testimony did not accurately reflect the CCTV's contents. At this point, it was

299        incumbent upon them to inform the Prosecutor and IA. The City's IA Investigations violated

300        policy for addressing use of force incidents is governed by Florida Statute § 943.1395, which

301        mandates that law enforcement agencies develop and implement protocols for reporting,

302        investigating, and monitoring such incidents involving officers' use of force. Despite

303        Sullenberger's request for IA's findings, the City has failed to provide them. The City and

304        CGPD violated policy and Florida Statute § 112.532, which outlines the protocol for

305      disciplining, suspending, or terminating a law enforcement officer who has engaged in

306      misconduct, including actions that violate an individual's constitutional rights. All parties

307      involved in drafting the A-form are in violation of policy and Florida Statute § 837.055, which

308      prohibits the making of false statements in official proceedings.

309  **III.A.cont. In the Defendants Motion to Dismiss (pg.15 line.10): "Sullenberger has presented**

310  **no facts establishing the city making a deliberate choice not to act despite this pattern of**

311  **conduct."** – False.

312  1. As Officer Puga testified in his deposition, he watched the CCTV with the City attorney, Mrs.

313     Ramos. It could be reasonably concluded that they harbored doubts about the accuracy of

314     Officers Nunez and Officer Flores testimony that Officer Puga swore to. Under Florida Statute

315     section 837.02. makes it a crime for a law enforcement officer to knowingly make a false

316     statement in an official written statement. Specifically, the statute prohibits any law

317     enforcement officer from giving false information. Sullenberger was accused by Officer Nunez

318     and Officer Flores of two counts attempted murder of a police officer with a firearm, the

319     offense is classified as a first-degree felony under Florida law. A person convicted of these

320     offense faces the potential of a two life imprisonment sentence. Because of the CCTV, the

321     prosecution dropped all of Sullenberger's charges, further emphasizing the absence of probable

322     cause. It is necessary to highlight the insufficiency of evidence by the Defendants to establish

323     a reasonable belief that Sullenberger had committed 2 counts of the alleged offenses: Resisting

324     Arrest with Violence, Battery on a Law Enforcement Officer, Resisting Officer with

325     Violence/Firearm, Attempted Aggravated Battery on a Law Enforcement Officer, Attempted

326     Murder 2nd Degree on a Law Enforcement Officer with a Deadly Weapon.

327  c.  It cannot be disputed that Officer Nunez and Officer Flores lied. The CCTV clearly establishes

328     the untruth of their statements. Officer Puga even subsequently conceded as much in his

329     deposition. The City has stated that the fellow-officer rule protects Officer Puga even though

13

330  Officer Nunez and Officer Flores lied. The City would rely on *Harder v. Edwards*, 174 So. 3d

331  524, 532 (Fla. 4th DCA 2015, to shield Officer Puga (and vicariously itself) from liability. An

332  accurate reading of *Harder*, which does not involve the fellow-officer rule, shows that it easily

333  is distinguishable and not that the City is mistaken.   The Fourth District laid out the

334  constitutional framework by which criminal defendants may seek to have a facially valid

335  warrant voided. *Id.* at 533. Under that framework, the misrepresentations are removed from the

336  affidavit and what remains is analyzed to determine the existence of probable cause. *Id.* at 532-

337  533. If the false statements are necessary to establish probable cause, the warrant must be

338  voided. *Id.* at 533 (citing *Terry v. State*, 668 So. 2d 954 (Fla. 1996) (additional citations

339  omitted)). The court found that, after removing Harder's false statements, enough remained to

340  support probable cause. *Id.* The Fourth District noted that in Harder there existed an

341  "inescapable truth... that a crime did occur." Id. at 532 (emphasis in original). *Harder's*

342  inescapable truth is absent from the case sub judice. Here, as shown by the CCTV, there was

343  no crime. Officer Nunez and Officer Flores's lies are all that Officer Puga regurgitated and

344  relied upon. Removing the lies, nothing remains. A far cry from the city's suggested reading of

345  'oh, its fine if police officers rely on lies in warrant affidavits,' *Harder* instead holds that, when

346  there are misrepresentations in an a warrant affidavit, they must be extracted from the A-form

347  and what remains must be analyzed to gauge probable cause. *Id* at 532-533. Officer Puga's A-

348  form, after excising the lies from Officer Nunez and Officer Flores, the A-form cannot shoulder

349  such a burden.

350  d. Sullenberger's prosecution was solely based on the A-form, the Incident/ Investigation Report,

351  and the Case Supplemental Reports, sworn on by Officer Nunes, Officer Flores and Officer

352  Puga's. It is well-established that exculpatory information for the defense must be disclosed,

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

353    including lies. The present argument is fortified by the fact that each officer reviewed the CCTV

354    footage, and it is a matter of fact expressed in *Brady* that Officer Nunez, Officer Flores and

355    Officer Puga, had a constitutional obligation to inform the prosecutor of the gross inaccuracy

356    of their statements. In accordance with the Supreme Court's decision in *Brady v. Maryland*,

357    prosecutors have a constitutional obligation to disclose exculpatory evidence to the defense,

358    including evidence that may undermine the credibility of law enforcement.

359 e.  The City attorney's watched the CCTV and did not acknowledge the officers' official

360    misconduct.

361 f.  When Officer Puga, the city attorney Mrs. Ramos, and Special Counsel to the City and CGPD

362    Mr. Reyes became aware of such irrefutable evidence undermining the credibility of Officer

363    Nunez and Flores, they were all obligated to disclose their discovery to the prosecutor, who

364    must in turn disclose it to the defense. Failure to disclose such important evidence in violation

365    of Sullenberger's due process rights should have resulted in a mistrial. Therefore, any evidence

366    that could potentially exculpate Sullenberger or undermine the credibility of the prosecution's

367    law enforcement officers must be disclosed to the defense in accordance with *Brady*.

368 g.  The City failed to conduct a proper investigation, allowed officers to resign without taking

369    disciplinary action, knowingly withheld important information, Tolled IA Investigations, and

370    allowed officers to resign affording IA the excuse that 'they can't interview the officers

371    anymore'.

372 h.  Sullenberger will prove the city's policy or custom was the "moving force" behind the violation

373    with the following elements:

374   1) Sullenberger's constitutional rights were violated:

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

375    a. The Defendant officers submitting false testimony on their A-form to support a probable cause
376        and arrest, is committing a violation of the Fourth Amendment.

377    2) The municipality had a custom or policy that constituted deliberate indifference to that
378        constitutional right:

379    a. The City's JA Program failed to follow the City's procedure for investigating a crime and was
380        instrumental in speaking with Officer Nunez and Officer Flores to determine which crimes to
381        charge Sullenberger with. The City's JA Program pursued maximum punishment without
382        affording Sullenberger with due process, violating his civil liberty. In addition, at a City
383        Commissioners meeting the City's JA Program defamed Sullenberger during a presentation
384        using fabricated A-forms to promote the JA Program. This has resulted in damage to his
385        reputation, family's reputation, and good standing in the community.

386    3) The policy or custom caused the alleged violation:

387    a. Sullenberger argues that the City failed to properly train and supervise Officer Puga in
388        conducting investigations is a proximate cause of the violation of Sullenberger's Constitutional
389        rights. "Employees cause a constitutional injury as a result of the municipality's policy – or
390        custom – based failure to adequately train or supervise its employees." AFL-CIO v. City of
391        Miami, 637 F.3d 1178, 1188 (11th Cir. 2011).

392    b. Officer Puga, was newly hired by CGPD and lacked the necessary training or knowledge to
393        properly investigate the allegations against Sullenberger. This lack of training and knowledge
394        led to the false imprisonment, malicious prosecution and constitutional injury of Sullenberger.

395    c. The City and CGPD has been accused of arresting citizens without probable cause and lying
396        on A-form, charging citizens for crimes they did not commit. Two published articles showing
397        a recent pattern of behavior by The City's CGPD captured on CCTV and do not accurately
398        reflect the officer's reports are: Ben Guerrero, a Police Officer and Mr. Gonzalez.

16

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

399  B.  **The SAC fails to state a § 1983 claim against the defendant officers.** – False

400  a.  As the result of the Defendant officers intentional official misconduct, false imprisonment,

401      malicious prosecution, and perjury, Sullenberger suffered: shame, embarrassment, great

402      mental anguish, depression, anxiety, fear, and loss of capacity for the enjoyment of life,

403      medical expenses, past and future lost wages, career advancement and the violation of his civil

404      rights, due process rights, and other physical and mental injuries.

405  **III.B.Cont. "In short, the CCTV footage does not support Sullenberger's incomplete, self-**
406  **serving and conclusory allegations suggesting that the Defendant officers lacked probable**
407  **cause to arrest him or that he was "not resisting" arrest.** – False.

408  a.  Florida Statute 776.051, provides that a person is justified in using reasonable force to resist

409      an unlawful arrest, but only if the arresting officer uses excessive force or the arrest is unlawful.

410  b.  A person may resist an unlawful arrest, but only if the arrest is clearly unlawful and the amount

411      of force used to resist the arrest is reasonable. CCTV does in fact support Sullenberger acted

412      with reasonable care under the totality of the circumstances.

413  c.  Sullenberger was Tasered by Officer Flores for a continuous 16 Seconds, sustained Traumatic

414      Brain Injury and a serious neck injury as a result of the assault, battery and excessive use of

415      force committed by Officer Nunez and Officer Flores.

416  d.  Officer Nunez and Officer Flores were unable to deescalate a situation when no threat existed.

417  e.  Sullenberger's CCTV proves the perjury committed by Officer Nunez and Officer Flores

418      (Exhibit E).

419  **III.B.Cont. Because Sullenberger has presented no facts establishing a lack of probable**
420  **cause, Sullenberger's § 1983 claim for false arrest against the Defendant Officers must be**
421  **dismissed.** – False.

422  a.  The grossly negligent response of the City, Officer Nunes, and Officer Flores to the panic

423      alarm nullifies their disingenuous argument for probable cause, which is unfounded and a

424      blatant misrepresentation of the facts. Sullenberger had already taken steps to cancel the alarm

425  by communicating with his mother 25 minutes prior to the officers' arrival from a neighbor's

426  phone, making their late response irrelevant for their probable cause argument and further

427  highlighting their negligence.

428  b.  In the criminal case brought by the Defendants and their Counsel, Mrs. Ramos and Mr. Reyes,

429  the burden of proof for probable cause rested on the prosecution, which was required to prove

430  beyond a reasonable doubt that Sullenberger was guilty of the crime they had been charged

431  with. To meet this standard, the prosecution had to present evidence that convinced the jury,

432  or in some cases, the judge, that there was no other reasonable explanation for the evidence

433  than that Sullenberger had committed the crime. However, in the criminal case, the prosecution

434  was not pursued further as Sullenberger presented CCTV that demonstrated the absence of

435  probable cause, thereby rendering the panic alarm and fabricated A-form by the officers

436  immaterial to the prosecution and civil action.

437  c.  The Officers, arriving by foot, in the dark, wearing dark clothing, states they heard

438  Sullenberger "through the bushes" informing them the homeowner was with a shotgun and not

439  to enter the property. Sullenberger did not know they were police officers.

440  d.  The Officers did not announce themselves as police officers and arrived without police cars.

441  e.  Sullenberger was within his constitutionally protect rights to deny entry to the property to

442  Officer Nunez, Officer Flores and anyone else.

443  f.  Only the arresting officer can determine if probable cause existed at the time of the arrest and

444  by removing Officer Nunez's and Officer Flores's fraudulent testimony, no crime occurred.

445  g.  It was incumbent upon Lead Investigator Officer Puga, to contact the homeowner, and all

446  witnesses. Officer Puga did not use proper investigative techniques violating CGPD policy.

832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

447    h.   Sullenberger was arrested and seized without a reasonable investigation. The facts and

448       circumstances known to the arresting officers were insufficient to give rise to probable cause

449       and the court could recognize that a single credible eye witness would provide that it was

450       incumbent upon Officer Puga to further investigate whether there was probable cause to

451       believe a crime had been committed.

452    i.   Sullenberger's neighbor, Dr. Santamarina, was arrested approximately four hours later by the

453       City and CGPD, warrantless and without probable cause. Later accepted a "deal" from the

454       City, Mrs. Ramos, and Mr. Reyes that the Defendants would drop his charges if Dr.

455       Santamarina would waive his constitutionally protected right to a civil action against the

456       Defendants. A similar deal was offered to Sullenberger.

457    **III.B.Cont. Sullenberger bears the burden of proving that the arrest was unreasonable**.

458    a.   Sullenberger submitted the Affidavit of expert witness Andrew Scott as an exhibit with the

459       SAC. His testimony clearly establishes Sullenberger's arrest was unreasonable and used

460       excessive force.

461    b.   In order to determine whether an arrest is reasonable under the Fourth Amendment, courts will

462       consider whether the arresting officer had probable cause to believe that a crime had been

463       committed. The burden of proof may shift back to the prosecution if the defendant

464       (Sullenberger) can demonstrate that the officer used excessive force during the arrest, which

465       would render the arrest unreasonable.

466    c.   In *Johnson v. Scott*, a 2012 case from the Northern District of Florida, the court held that the

467       burden of proof shifts to the prosecution if the defendant (Sullenberger) can demonstrate that

468       the arresting officer used excessive force that was clearly unreasonable under the

469  circumstances. Sullenberger's CCTV shows the Officer Nunez and Officer Flores used

470  excessive force for the situation.

471  d.  If you remove the officers, no crime had been committed, the most serious crimes capture on

472  the CCTV could be argued was committed by Officer Nunez and Officer Flores.

473  **III.B.Cont. The reasonableness of an arrest is, in turn, determined by the presence or**
474  **absence of probable cause for the arrest. Defendant left "citations omitted".** – False.

475  a.  It has been affirmed in many court decisions, including the U.S. Supreme Court decision in

476  Beck v. Ohio, 379 U.S. 89 (1964), which held that an arrest without probable cause violates

477  the Fourth Amendment. Another important case is Illinois v. Gates, 462 U.S. 213 (1983),

478  which established a totality of the circumstances test for determining whether probable cause

479  exists. The Defendants lack sufficient probable cause or legal justification for the arrest.

480  **III.B.Cont. If an officer has probable cause to believe that an individual has committed even**
481  **a very minor criminal offense in his presence, he may without violating the fourth**
482  **amendment, arrest the offender.**

483  a.  It is important to note that the officer must follow proper procedures during the arrest, if an

484  officer violates procedures, the arrest may be considered unreasonable and a violation of the

485  individual's Fourth Amendment rights. The arrest made by the Defendants was unjustified as

486  the officers did not meet the criteria for an arrest, which includes witnessing a crime or having

487  probable cause to believe that Sullenberger committed a crime. The Defendants only created

488  probable cause hours after the arrest in an effort to evade civil action, violating 18 U.S.C. §

489  241. This lack of probable cause will render Sullenberger's arrest invalid, and any evidence

490  resulting from his arrest will have to be suppressed, including the panic alarm.

491  **The SAC fails to state a §1985 against all Defendants**. – False.

492  f.  Sullenberger raises claims pursuant to § 1985, citing the concerted and colluded efforts of the

493  Defendant officers, their supervisors, Mrs. Ramos and Mr. Reyes to write a fabricated A-form.

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

494  g. Sullenberger believes that Mr. Reyes, while acting in his official capacity, on behalf of the

495   City, used his extensive legal expertise to help create a probable cause and assisted in choosing

496   the charges placed on Sullenberger. The City carries out these acts through the JA program.

497  h. Sullenberger cites 42 U.S.C. § 1986, which imposes liability on individuals who possess

498   knowledge of wrongdoing that is prohibited under 42 U.S.C. § 1985, and it is plausible that

499   despite having spoken to the officers and reviewed the CCTV footage, Mr. Reyes did not take

500   appropriate actions to remedy the situation even though it is reasonable to conclude that he

501   could have determined that the officers' statements were lies.

502  i. Sullenberger is invoking § 1985 as a basis for holding The City, the Defendants, Mrs. Ramos

503   and Mr. Reyes accountable for their alleged actions. Specifically, Sullenberger argues that the

504   City attorneys had knowledge of wrongs prohibited under § 1985 and conspired with the

505   Defendants by allegedly creating false probable cause and fabricating the A-form. Sullenberger

506   contends that Mr. Reyes and others conspired to deprive him of his right to due process, civil

507   rights, equal protection of the law.

508  j. Furthermore, the City, as the employer of Officers Nunez, Flores, and Puga, is vicariously

509   liable for their actions. As a result, Sullenberger argues that Mrs. Ramos and Mr. Reyes, acting

510   on behalf of the City, could also be held vicariously accountable for false imprisonment and

511   may also be liable for the alleged conspiracy of committing official misconduct to aid the City

512   in avoiding a civil action, contributing to a lengthy malicious prosecution against Sullenberger.

513  k. Sullenberger accuses the City and Defendant police officers of having malicious intent to arrest

514   him after an extended detention without probable cause. Officer Puga, was directed by his

515   supervisors to write his A-form without conducting a thorough investigation, in violation of

516   CGPD protocol. Each of these accusations, if proven, would further impugn the validity of

517   Sullenberger's arrest. The federal court should revisit the claims dismissed without prejudice

518   in the state court, given that the Defendants intentionally misled magistrates with fabricated

519   affidavits. Such purported misconduct demands appropriate sanctions from the court, and

520   Sullenberger has ample evidence to substantiate these allegations.

521   l.   The Defendants are accused of initiating a criminal proceeding against Sullenberger after

522   wrongfully arresting him and submitting fabricated A-form's to the SAO. Inevitably, the

523   charges were dismissed on account of Sullenberger's innocence, indicating that the prosecution

524   was initiated without probable cause.

525   m.   Inconsistencies between the A-form and the CCTV footage support the allegation of a colluded

526   effort to fabricated probable cause by the Defendants. Sullenberger has plausibly asserted that

527   the Defendants, their supervisors, and counsel Mrs. Ramos and Mr. Reyes, acted with malice,

528   deliberately fabricating A-form in order to conceal their use of excessive force and to

529   intentionally deceive the State Attorney's Office and the court.

530   n.   Sullenberger's claims are further bolstered by the 'Continuing Violation' doctrine. Under this

531   doctrine, each time Sullenberger is denied employment or experiences other negative

532   consequences as a result of the false imprisonment and damaging FBI record, a new violation

533   of his rights occurs. As a result, the statute of limitations may not bar Sullenberger from

534   bringing a claim based on the ongoing, continuous, devastating, and life altering harm.

535   o.   A recent example of a new violation concerns Sullenberger's application for a Top-Secret

536   Security Clearance, which was denied following an interview with the investigator. During the

537   interview, the investigator inquired about Sullenberger's arrest for attempted murder of two

538   police officers. It could be reasonably asserted that Sullenberger was deemed unsuitable for

539   the clearance due to his unwarranted and damaged FBI record.

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

p. In this case, the "harm rule" may apply, as Sullenberger could argue that the Defendant officers acted wrongfully and negligently by fabricating their A-form, and that this fabrication caused significant harm to Sullenberger's FBI record, pursuing set goals, which is affecting his ability to seek employment.

q. Under the harm rule, Sullenberger may be able to recover damages for the harm they suffered, even if the harm is not physical in nature, as long as the harm was caused by the Defendant's intentional wrongful conduct. Specifically, Sullenberger has suffered serious harm to his reputation, which encompasses damage to his standing in the community, loss of employment opportunities, and other consequences arising from the damaged arrest record.

r. It is noteworthy that Officer Puga and the City's attorney, Mrs. Ramos, reviewed the CCTV footage together, and it could be reasonably suggested that it raised doubts about the accuracy of sworn statements made by Officers Nunez and Officer Flores. This evidence could be considered Brady material and further suggests the City's deliberate attempt to conceal perjury by Officer Nunez and Officer Flores further strengthening Sullenberger's Section 1983 and 1985 claims. Mrs. Ramos likely determined the CCTV footage contained exculpatory evidence that exonerated Sullenberger and had a constitutional obligation to disclose it to the prosecutor in accordance with the landmark case of *Brady v. Maryland*.

s. In light of the aforementioned conduct by the Defendants, Sullenberger has made a credible assertion that the creation of fabricated A-form, the fabrication of probable cause, and the malicious prosecution have caused, and are likely to continue causing, significant harm to Sullenberger, his liberty and pursuit of happiness.

23

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

561  t.  i.e. There was a massive cover-up attempt to absolve the police officers and the City of any

562     liability for their wrongdoing, which ultimately has caused significant harm to the integrity of

563     the CGPD, Sullenberger, his family and the neighbor Dr. Santamarina and his family.

564  **IV. State Tort claims for arrest, battery, false imprisonment, and malicious prosecution all**

565  **warrant dismissal.** – False.

566  a.  There was not a probable, or arguable probable cause to arrest Sullenberger. Florida Statue

567     901.151 provides a person may be detained where the officer has reasonable grounds to believe

568     the person has committed, is about to commit or committed a crime. At the time the officers

569     were unlawfully and without permission in the enclosed yard of Sullenberger's residence, no

570     crime had been committed, there was no reasonable basis to believe a crime was about to be

571     committed, or that Sullenberger was committing a crime.

572  A.  **The assault and battery claims involve acts which are incidental to Sullenberger's arrest**

573     **and do not give rise to independent Torts.** – False.

574  a.  An arrest causing injury to the head is excessive force and does in fact give rise to independent

575     Torts. Sullenberger sustained physical head and neck injuries, as well as psychological injuries

576     as a direct and proximal result of Officer Nunez and Officer Flores assault and battery.

577  b.  The Eleventh Circuit has held in Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th

578     Cir. 2000), that a reasonable officer would know that the use of force that causes injury,

579     particularly head injuries, is excessive and not justified.

580  c.  Sullenberger sustained neck injury including bilateral uncovertebral hypertrophy, with severe

581     left neuroforaminal narrowing. Spondylosis to the cervical region, severe concussion with loss

582     of consciousness, whiplash and facial injury.

583  d.  Sullenberger suffers from Post-traumatic stress Disorder, Major Depressive Disorder and

584     Generalized Anxiety Disorder, the cause of which resulted from the incident involving the

585     Defendants on or about on December 2, 2017.

24

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

586   e. Sullenberger suffers from blurred and reduced vision in the left eye.

587   **B. The false imprisonment claims as to the Defendant Officers have already been**
588   **adjudicated on the merits and are barred as a matter of law.** – False.

589   a. The counts against the Defendants were not dismissed with prejudice and the ruling was made

590      without using factual evidence. On or about December 2, 2017 Officer Nunez and Officer

591      Flores acted in bad faith and with malicious purpose and in a manner exhibiting wanton and

592      willful disregard for Sullenberger's rights and safety when they falsely arrested him without

593      probable cause or legal justification in violation of Fla.Stat.768.28(9)(a), caused severe and

594      lasting injury and compounded their lies into the A-form that Officer Puga prepared and the

595      City used for their 3 year long malicious prosecution.

596   b. Sullenberger argues that the Defendants used deceit and fraudulent documents in the court.

597      This should require sanctions from the court, and that Sullenberger should not be penalized for

598      seeking justice in a federal court where the Defendants would not be able to continue their

599      malicious tactics with impunity and complete disregard for the truth. As JUSTICE KENNEDY

600      posits, ante, one of the primary purposes of § 1983 was to provide a remedy "against those

601      who representing a State in some capacity were unable or unwilling to enforce a state law."

602      *Monroe v. Pape*, 365 U. S., at 175-176

603   c. The instant case was filed independently, and the federal court has jurisdiction to hear the case,

604      it should survive a motion to dismiss. Sullenberger can show that the false testimony was

605      material to the state court's judgment and argues that the preclusive effect of the state court's

606      judgment should be non-existent in the federal court.

607   d. Sullenberger initiated a federal lawsuit for the same state tort claims, finding it necessary for a

608      federal judge to hear the case because he believed that the state court was grossly overlooking

609      the facts of the case. The 11th Circuit Court was ignoring the material facts causing unfair

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

610   prejudice to Sullenberger and his defense. The CCTV captured the assault, battery and perjury

611   committed by the Defendant officers, yet not a single Circuit judge questioned the perjury or

612   official misconduct by the Defendants. In amazement, the City and officers representation by

613   Mr. Reyes, a former 11th Circuit Court judge and a close friend of Judge Altfield, who did not

614   recuse himself from the case, had led to unfair rulings, including the quashing of Mr. Reyes'

615   subpoena related to his use of the SAO to waive Sullenberger's civil rights. In response to these

616   actions, Sullenberger's counsel filed a motion to have the case removed from the 11th Circuit

617   Court due to the obvious continuing bias.

618   e.   The City is still Tolling and withholding important investigative matters benefiting

619   Sullenberger. The allegations, when proven, would demonstrate the Defendants purposely

620   misled magistrates using fabricated A-form's and continued their malicious prosecution and

621   abuse with impunity and complete disregard for the truth.

622   f.   "Abuse occurs when a material factor deserving significant weight is ignored, when an
623   improper factor is relied upon, or when all proper and no improper factors are assessed, but the
624   court makes a serious mistake in weighing them." *Independent Oil and Chemical Workers of*
625   *Quincy, Inc.* v. *Procter Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir. 1988); see also *Anderson*
626   *v. Cryovac*, *1118 Inc., 862 F.2d 910, 923 (1st Cir. 1988). -- Despite what appeared to be a
627   clear disregard for the facts of the case by the state court, the judge did make a ruling that
628   allowed Sullenberger to amend their complaint in order to address any deficiencies in their
629   claims.

630   C.   **The false imprisonment claims are subject to dismissal where the Defendant officers had**
631   **probable or arguable probable cause to arrest Sullenberger.** – False.

632   a.   The state could not prove a prima facie case of guilt. The arrest was without probable cause.

633   The Defendants attempt to supply facts and suggest the Defendants had probable cause is their

634   argument. However, if you remove each lie in their arrest report, nothing remains, and the A-

635   form is unenforceable. At the time of arrest the officers unlawfully and without permission

636   entered the enclosed yard of Sullenberger, no crime had been committed, and Sullenberger

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

637 committed no crime. *Review Tillman – series – State and Federal Cases, argument of exigent*

638 *circumstances.*

639 D. **The SAC fails to state a claim of malicious prosecution as to any named Defendant**. –
640 False.

641 a. Malicious Prosecution is against the Defendants collectively.

642 b. The pursuit of a malicious prosecution against Sullenberger was committed by all Defendants.

643 **V. The Defendant Officers are Entitled to statutory and qualified immunity as to all claims**
644 **brought against them.**

645 a. This immunity is not absolute, and it is overcome in this situation where the Defendants have

646 violated clearly established constitutional rights. Officers Nunez and Officer Flores used

647 excessive force, fabricated evidence, withheld exculpatory evidence, suppressed misconduct,

648 conspired with supervisors and city attorneys to cover up misconduct, falsely arrested

649 Sullenberger in violation of the Fourth Amendment and are not entitled to qualified immunity.

650 b. Officer Puga actively participated in and contributed to Sullenberger's constitutional injuries

651 by not conducting a thorough investigation, suppressed misconduct and violated *Brady* by

652 failing to disclose exculpatory evidence for Sullenberger's defense.

653 A. **The Defendant officers are entitled to statutory and qualified immunity as to all claims**
654 **brought against them.** – False.

655 a. Police officers who lie should not be protected by qualified immunity and should be subject to

656 a thorough investigation. In this case, it is important to hold the City, Officers Nunez, Flores,

657 and Puga accountable for their possible multiple Florida Department of Law Enforcement

658 ("FDLE") violations, as evidenced in (Exhibit F).

659 b. All are equal under the color of law including said police officers that fabricate A-form and

660 were willing to pursue prosecution with the possibility of Sullenberger receiving two life

661 sentences with full knowledge that their affidavit sworn to statements are lies.

662    c.   Sullenberger has alleged facts that, if proven, would demonstrate that the Defendants acted
663         with deliberate indifference to his constitutional rights. Specifically, Sullenberger alleges that
664         the Defendants created a falsified probable cause and used and submitted false arrest reports,
665         which misled magistrates and the court. Such conduct, if proven, would constitute a violation
666         of Sullenberger's clearly established constitutional rights and remove the protection of
667         qualified immunity for the Defendants.

668    d.   The Defendant's use of force, including a failed hip toss maneuver and a violent throw into the
669         sidewalk, constitutes a violation of Sullenberger's clearly established Fourth Amendment
670         rights. As established by the Supreme Court in *Graham v. Connor*, 490 U.S. 386, 395 (1989),
671         the use of excessive force during an arrest is a violation of the Fourth Amendment's protection
672         against unreasonable seizures.

673    e.   Moreover, the Eleventh Circuit has held in *Priester v. City of Riviera Beach*, 208 F.3d 919,
674         926 (11th Cir. 2000), that a reasonable officer would know that the use of force that causes
675         injury, particularly head injuries, is excessive and not justified. Here, Sullenberger has
676         presented evidence that the Defendant used excessive force, inflicting serious injuries
677         including a concussion, facial injuries, and a serious lifelong neck injury. A reasonable officer
678         would have known that the use of a retaining wall as a pivot point increased the force in a
679         manner that was excessive and caused serious injury.

680    f.   Unconstitutional taser usages by Officer Flores could remove Qualified Immunity and does
681         not fall under harmless error. Officer Flores is accused of using excessive force against the
682         plaintiff, who was not violent and did not pose an immediate threat to Officer Nunez, Officer
683         Flores, or anyone else. Despite this, Sullenberger was shot with taser darts by Officer Flores at
684         point blank range, tasered 3 times consecutively for a total of 16 seconds and given no warning

28

685     beforehand. The first shot was fired while Sullenberger was standing, and the second two shots

686     were fired while the plaintiff was lying face down on the sidewalk. These actions could be

687     argued to be objectively unreasonable and went beyond what was necessary to maintain safety,

688     violating the Sullenberger's rights, strengthened by the fact that only Officer Flores used her

689     taser and Officer Nunez did not feel the need for using a taser weapon.

690   g.  Most recently, the Tenth Circuit (Judges Kelly, Brorby and Gorsuch) concluded that the use

691     of a taser gun like the one at issue here "against a non-violent misdemeanant who appeared to

692     pose no threat and who was given no warning" was unconstitutional excessive force under

693     *Graham*, for which the officer did not enjoy qualified immunity. *Cavanaugh v. Woods Cross*

694     *City*, 625 F.3d 661, 663-65 (10th Cir. 2010). Citing our decision in *Bryan*, Judge Kelly wrote:

695     "Although Tasers may not constitute deadly force, their use unquestionably "seizes" the victim
696     in an abrupt and violent manner. Accordingly, the "nature and quality" of the intrusion into the
697     interests of Ms. Cavanaugh protected by the Fourth Amendment was quite severe."

698     "a stun gun inflicts a painful and frightening blow, which temporarily paralyzes the large
699     muscles of the body, rendering the victim helpless."); *Cavanaugh v. Woods Cross City*, 2009
700     WL 4981591, at *5 (D.Utah Dec.14, 2009)

701   h.  "I therefore conclude that use of a Taser constitutes an intermediate level of force and a
702     significant intrusion on a victim's Fourth Amendment rights."); *McDonald v. Pon* 2007 WL
703     4420936, at *2 (W.D.Wash. Dec.14, 2007)

704   i.  Therefore, the Court could find in favor of Sullenberger and remove Officer Flores qualified

705     immunity in this case, as their actions should be seen as a violation of his constitutional rights.

706     Sullenberger cites the case of *Bryan v. McPherson*, 590 F.3d 767 (9th Cir. 2009)

707        The plaintiff, *Carl Bryan*, was a passenger in a car that was pulled over for a traffic

708     violation. During the stop, Bryan refused to comply with the police officer's supervisors, and

709     was eventually removed from the car and tasered three times in quick succession. Bryan

710     suffered significant injuries as a result. The court found that the use of the taser in these

711     circumstances was excessive and violated Bryan's Fourth Amendment rights. The court also

Simon Gerald Sullenberger
832 Santiago Street, Coral Gables, Florida, 33134
Phone: (845)332-0223

712    held that the police officer was not entitled to qualified immunity, as it was clearly established

713    at the time of the incident that the use of a taser in these circumstances was unconstitutional.

714  **VI. Claim for punitive damages must be stricken and dismissed.** – False.

715  a. The Defendants can all be held liable for punitive damages because their actions were willful,

716    malicious, and exhibited a reckless disregard for Sullenberger's safety and Constitutional rights.

717  A. **The city is immune from Sullenberger's punitive damage claim.** – False.

718  a. The actions of the City and its employees, acting under the color of law, Mr. Reyes, Mrs. Ramos,

719    OFFICER NUNEZ, OFFICER FLORES, OFFICER PUGA AND their supervisors were

720    intentional, are continuing, and they acted with knowledge that their conduct would likely cause

721    serious harm to Sullenberger. Their conduct was egregious and went beyond mere negligence or

722    a mistake, i.e. a willful cover up, Violating 18 U.S.C. § 241 and 242.

723  b. Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003) demonstrates that a city can be held

724    liable for punitive damages.

725  ## CONCLUSION

726    Sullenberger filed this federal civil action to bring attention to the Defendants willingness

727  to violate his civil liberty with malicious intent and respectfully requests that this Court deny the

728  Defendants' Motion to Dismiss the SAC. Sullenberger has alleged sufficient facts to state claims

729  for violations of his constitutional rights, and these claims are supported by strong evidence of

730  the Defendants' malice and official misconduct. The Defendants' attempt to evade liability

731  through legal technicalities must not be countenanced. Sullenberger has suffered serious and

732  permanent harm as a result of the Defendants' actions, and respectfully seeks redress for the

733  seizure and injuries he has endured. Sullenberger urges the Court to hold the Defendants

734 | accountable for their unconstitutional behavior and to allow this instant case to proceed to

735 | Discovery.


736 | THEREFORE, it is respectfully submitted that the Defendants Motion to Dismiss the SAC should
737 | be denied.


738 | Respectfully,


739 | Simon Sullenberger
740 | 832 Santiago Street.
741 | Coral Gables, Florida, 33134
742 | Email: simonsullenberger@gmail.com
743 | Phone: (845)332-0223